at all, numbers 15-3895 and 16-2214. Ms. Pollack and Mr. Colvin. May it please the court, my name is Cynthia Pollack and I represent the appellants Michael Souryavong and also Nelson Rowland. I reserve three minutes for rebuttal. That's fine. The first issue that I want to address with the court is the fact that the willfulness of the violation of the Fair Labor Standards Act should have gone to the jury. Here, the district court actually improperly granted a Rule 50 without all the evidence and it was only my case in chief. Let me ask you about that because I have the transcript of what looks like the Rule 50 argument. What did you offer the district court at that juncture in the trial to support this going to the jury? What specifically did you offer? I offered the fact that they knew Lackawana County found out that they were violating the Fair Labor Standards Act and instead of remedying that, they actually continued for 10 months thereafter to fail to properly pay my plaintiffs their wages, specifically Plaintiff Velez. But in addition to that, I had a white gentleman that actually received a settlement from Lackawana County but yet my gentlemen, one was Los, one was Hispanic, and one was Puerto Rican, all of them didn't get the same courtesy that Lackawana County gave to the white gentleman, Stephen Kelly. Also, I offered the fact that since 2007, they knew about the Fair Labor Standards Act and instead of honoring that act, they continued to provide two W-2s to these gentlemen when they were employed by one entity. It would be as if you were riding the circuit, say you were in the Second Circuit, and you actually worked there, but you'd be paid by that circuit, not by the Third Circuit. Everyone knows when you work for an employer, one W-2 for the hours of work. Here, Lackawanna County knew for four years that they were issuing these tax documents to these gentlemen. Clearly, that's a red flag. The CPA that was in charge of the payroll system for Lackawanna County certainly should have been alerted that this is a problem. It's a red flag. Isn't the only evidence that you have of a woeful violation is that the county became aware of it? No, I have also the additional, the fact that they weren't paid for four years and they were issuing tax documents to each gentleman, two of them. That should alert anyone, something's wrong here, because when you work based on the number of hours, you get one W-2. So clearly, by issuing these tax documents to the same employee, you know you're doing something wrong, and you have an obligation to make sure you honor the Fair Labor Standards Act regulations and properly pay these individuals. Well, a willfulness finding would get you an additional year in the statute of limitations. Is that correct? Correct. And you've alleged that Servian was not paid proper overtime from 2008 to 2011. Correct. You filed a lawsuit in 2013. Correct. So the farthest you could go back is 2010, I take it. I believe it was 2013 that I filed the action, but it would be three years. Three years from then. Three years back to 2010. Okay. Yes. And frankly, I was struck by the amounts that the jury awarded. Servian was awarded $608.30. Roland was awarded $307.50. What would an additional year, do you have any estimate of what an additional year would have brought into play here? I don't have that calculated to advance the court, but certainly every shift that they worked and they didn't get paid properly, they're entitled to that. And Lackawanna County knew and said, like the white gentleman, they didn't correct my fellows. And so certainly they knew and they didn't do anything about it, and that certainly supports willfulness. Was that the basis for your fair representation claim? No, it's the fact that the fair labor standards, they violated the acts from 2010. You filed a fair representation claim against the Association of the Union, correct? Correct. And that was dismissed following presentation of evidence? And that's not before us now. Yes. We appealed and we resolved the case for the mediation program. Okay. All right. The district court in this case, as I understand it, did find willfulness for purposes of liquidated damages, correct? Correct. So that would be more evidence to support the fact that the willful should have proceeded to a jury, because here, after everything, you found an intentional violation. Why wouldn't you find that in the willful analysis? Was there a different standard or a different analysis with respect to the one year and look back the extra year as opposed to the liquidated damages? Correct. There is a different standard. There is a different standard. I think it's a fair, did you act in good faith for the liquidated damages. The other standard would be that they willfully acted. It's a steeper standard. I think steeper on the liquidated damage analysis versus the willful. So I think that there was sufficient evidence with all that to allow that issue to go to the jury. The defendants made an offer of settlement. Did they not under Rule 68? Yes, but they did. But there's two things with that. First of all, it's not in this appeal because the fact that counsel did not appeal anything and the court actually did not rely on that related to the attorney fees positions. But they were offered. But in order for an offer in Fair Labor Standards Act, it always has to be approved either by the Department of Labor or by the district court when the district court takes everything into consideration. That's only after you've accepted. You've indicated that you would like to accept the offer of judgment. I disagree with you. I think that the defendant has an obligation to come forward and show the court that this is a reasonable, fair offer. And they're inadmissible to prove the essence of the claim. So I really don't think it involved anything with the willful issue. Obviously, my clients, hindsight is always best, but clearly they were entitled to try their case if they so wanted to. And actually, we beat the offer of judgments because with the attorney fee, it beat every single one of them, so it couldn't be used against us regardless of that fact. And even Edwin, his alone, they offered $6,000, and he was awarded by the court $8,000. So clearly that's even without the attorney fees analysis. The second issue I have is with the attorney fee petition. And one of the issues, the court decided that I wasn't worthy of the $400 that I had proposed. But the court did do a Mindy type evaluation, and after you do that, you can take other factors into account, can you not? I would disagree with you. The minute he held a hearing, that meant I met a prima facie case, which he admitted in footnote 4 of his opinion. And my thoughts are the only evidence that was submitted at that hearing was from me bringing in live lawyers. One, Carlos Sabatini, who joined the practice at the same time as me. He gets $375,000, and he was awarded by Judge Caputo $350,000 on another matter. Shelly Santini, I provided her. She started a year after me. But you allege that the district court considered, you say defendant Lackawanna County did not produce one lawyer to attest to the market rate for lawyers in the middle district handling civil rights matters. What about the Lavery Declaration? They did not offer one lawyer. I subpoenaed two lawyers to come. What about the Lavery Declaration as to what rates were for civil rights matters in the middle district? To me, once you go to a hearing, you have to present your evidence. It's an evidentiary hearing that the court can rule on that. But Kelly introduced evidence about the market rate. The market rate, and I showed middle district lawyers who do plaintiff fee-shifting federal litigation that they are paid $375,000, $350,000. So clearly the court was limited on choosing what was in the record, which was live testimony for two people. And, in fact, Christine Sabatini, who started practicing in 2005, six years after I graduated, she's sitting $325,000 an hour. And we all of us, all three. You can understand why, just at the outset, looking at sort of the gestalt of all this. There's an offer of settlement. There is a concession of liability. So, in effect, the court's asking itself, why compensate you for work that a client would not need? There was not a concession. I had to move for summer judgment to get that. There was no concession. They didn't hand that over to me. I had to move for it. And clearly there was a dispute as the amount of time and whatnot, and we also pursued equitable tolling, which would have given me all the way back to 2007 with Michael Sorebonne. And so I could clearly have gotten what I think counsel, during closing, said he was entitled to much more. And so I could have gotten all of his remedy based on the equitable tolling argument. And, again, beat the office of judgment because the attorney fee award of $50,000 was more than all the offers that were combined, and they specifically excluded attorney fees. So, and then regarding the similar services, the court seemed to believe I needed to get an affidavit from a Fair Labor Standards Act lawyer. And I argue that you don't need that because it's similar services. It doesn't have to be identical. And the similar services would be any type of civil right. I mean, part of the problem is, just take, for example, on page, I think it's 19 of your brief, you've got, there was a concern by the court somehow that there was double billing here, whether there was or wasn't. Quote, the trial court determined, you're right, that plaintiff's counsel had double billed. However, opposing counsel filed separate documents in each case, and therefore there was no double billing. In fact, the documents are different lengths. The pretrial memo and the Roland matter was 16 pages, while the pretrial memo and the Sir Yvonne matter was 15 pages. Like, so what? I mean, the question is, are the arguments the same? Well, Your Honor, the defendants get to bill for all the work they generate for each client. They don't only cut it down to one client. In this case, there was obviously two different documents, so you have to go through both documents in order to represent each client. So when you go about doing your billing, let's say you look at both documents and you respond to both, and you spend altogether on both two hours. Pick a number. Are you billing two hours or are you billing four hours? Are you billing two hours to the one matter and two hours to the other? That is not what occurred in this case. So the answer is it's not. Is that right? Well, to me, each document has its own amount of time to look, review, brief. So how can you say, oh, just assume the arguments are the same in both and clearly it's not? Let's go back to my question. You have both the Roland matter and the Sir Yvonne matter. You're looking at the responses of both, one's 15, one's 16 pages, and you realize they're making the same arguments, and you respond total of two hours. So do you put two hours on Roland and two hours on Sir Yvonne? Well, my thoughts are they're always separate, and so no, it would be whatever time it took you to look at that document. So it's like an hour apiece then? If that's what it would take, it would be an hour apiece for each document because of the fact it was obviously two different documents. The court was accusing me of double billing, and I want to show this court I'm not double billing. Why? Because the documents are different. I have an obligation, an ethical obligation, to make sure I review a document even if it's similar arguments, and I can guarantee that the defense lawyers pay or charge for both documents they've produced. So just to make it clear, in that example that I just gave, were you billing like one hour to Roland matter and one hour to the Sir Yvonne matter, or were you billing two hours to one and two hours to the other? I don't think there was one hour or two hours, but it would be separate and distinct. So it wouldn't be two hours. It would be one hour, one hour. Okay. You know, that's what I would say. So you told the court that? What did you say to the court that would try to rebut the concern that there might be double billing? Well, this happens again and again and again. Just because you have similar cases, they swipe 50% off of the second case because, oh, it overlaps. But really it doesn't overlap because of the fact you have to address those cases. It's going to be a small time because you all have familiarity with some of the issues, so you may be able to use a brief, you know, to support the same arguments. So the court just assumed I double billed, but clearly I did not double bill because they're two separate documents. And my last argument I would make is that the loan start with $84,000, the court did the rare exceptional act reducing that to an arbitrary number of $50,000, which is inappropriate based on this court's decisions. I think the point is that after you do the loan start, I mean, the only thing I can see wrong with what the court did is refer to some of the factors from the Fifth Circuit case in Johnson when, in fact, you're confined to Linde. But in the end, the court followed Linde. And the Supreme Court in Purdue v. Kennedy says that Linde is the test. You do the loan start analysis, and then you can add or detract based on considerations. And the court seemed to have done that. It set the correct baseline, did it not? I would disagree, Your Honor, because the fact— But wait a minute. The baseline was what, $84,000? $84,000. And novelty, complexity, results already obtained are already thrown into the mix when you do the loan start. So it would have to be such a rare and exceptional case to make a downward or upward departure. So if it was $84,000, you wanted, what, $149,000 or $150,000? That's what my position was. Is this the rare and exceptional case? Absolutely not. And you can't—the court looked at the disproportionality. And it's clear that the cases say, you know, FMLA, FLSA, they're very low-ticket items. So you're not going to get high damage reward. But that doesn't deter or that—we want payor lawyers to take those cases, even if they're small. So I'm just—so I understand. The loan start came out to $84,000.  You sought roughly $150,000? I think I was $140,000-something. $140,000-something, okay, $149,000, whatever. And what was the reasoning as to why you were entitled to an enhancement? I didn't want an enhancement. If you determine the loan start is $84,000, $84,000 is $6,000. Lowering it to an arbitrary number of $50,000 is where the bond price— I get that. But what was the argument—what was the reasoning as to why you deserved more than $84,000? Well, that was my fee petition. The court lowered my hourly rate, so then it would always be lower. Because if he did—I was doing it at $400, it was $250,000. He determined, so clearly it's going to go lower based on that, and then he cut some of the hours out, which is, you know, normal. But you certainly don't do the rare exceptional of lowering it to— I got you. I got you. Thank you, Your Honors. Thank you. Mr. Coleman? Good morning, Your Honors. I'm Harry Coleman. It's a pleasure representing Lackawanna County. I'd like to start with the attorney's fees, if I may. The reasonableness of a fee award is viewed by this court, as you know, on an abuse of discretion. The district court can go up or down if the lodestar is deemed unreasonable. The district court spent a significant amount of time and pages, in the opinion, if you will, in addressing the attorney's fee issue. Under the Hemsley decision, the 1983 United States Supreme Court decision, the results obtained under that framework is a critical factor. And I know Judge Van Asken noted that the jury's award here was small. I believe the jury's award here was appropriate because I believe what the jury did was take the net amount that they were paid—they were already paid, but they were not paid the overtime. So what the jury did was—and they asked for two calculators during the deliberations. What they did is reduced what they were going to award by what they were already paid for a net result. I believe, although small, $307 for Mr. Rowland, which, by the way, is 478 times— the attorney's fees sought are 478 times greater than Mr. Rowland's award. Mr. Storyvon was awarded $600. The attorney's fees sought are 241 times greater than what the client received there. And Mr. Velez received $4,672 and counsel seeking fees 31 times greater. Under the Hemsley framework, again, the results obtained is a crucial factor in awarding the attorney's fees. What's the amount of liquidated damages? Just a curiosity. In this particular case? In this particular case. Is that double the award? No, it's liquidated, so— I was looking for the decision. Okay. The liquidated damage award, based upon the court's perception of the good faith, if you will, of the county, we didn't quarrel with that. I believe it was double. Okay. I may be mistaken. It's in the statute. We didn't quarrel with that award because, and again, there's a distinction here because there's a willfulness issue versus the good faith. I'm glad you're addressing that because it's hard conceptually to reconcile the judge finding not enough evidence of willfulness but finding that you did not have a good faith basis for not paying. Your Honor, there's a circuit split the way I understand it under the preclusion majority test followed by the 5th, 6th, 9th, 10th, and 11th circuits where the two positive findings here are inconsistent versus the distinct test approach, which is followed by the 4th and 8th circuit, which recognizes that the differing burdens allow for both—the differing burdens and also the differing stages in the litigation and the record that the district court reviews, the differing burdens allow for inconsistent findings to coexist. Which is the more exacting burden, the liquidated damage or the three-year look back? I would say the three-year look back would be more exacting, Your Honor. Why so? What would you have to prove to get to the three-year look back? To get the three-year look back, plaintiff had approved willfulness. And I cited in my brief and with due respect to counsel, the judge was very, very patient. The trial court judge was very, very patient and asked repeatedly, what is the evidence of willfulness? A question asked this morning. In the particular record, I submit other than continually saying, well, they weren't paid overtime. That should not be the standard. Every Fair Labor Standard Act case is premised upon that very argument. They weren't paid overtime. But there's got to be more. There's got to be an intentional violation or there's got to be a recklessness to it. In this particular case, as sad as it is, the county had a payroll system that could not recognize an employee working in multiple departments because they were assigned different employee numbers. And unfortunately, the system, the computer system employee didn't capture that for overtime purposes. Once it was recognized, it was remedied. And we went through the process attempting to resolve the matter with these particular appellants. But the judge did allow willfulness or did find willfulness for purposes of liquidated damages. I submit, Your Honor, with respect, he did not find willfulness in liquidated damages. What he found was an absence of good faith on the part of the county based upon the entire record. When the district court was confronted with the willfulness argument, it was at the conclusion of the plaintiff's case in chief and at their presentation. And looking at that record at that stage, the district court concluded, I believe correctly, that there was no evidence in that record at that particular stage to allow the willfulness issue to go forward to the jury. And I believe that's what my colleague is complaining of, that they should have had that additional year. I believe the record doesn't support the additional year because I don't believe there was any evidence. At the time the district court made that decision, any evidence other than they weren't paid overtime. And that's the flag that the appellants are flying is that they weren't paid overtime. That's enough. I respectfully submit it's not, that more is needed and more was lacking. At the outset, the March 2011 email, why was there not a claim that that was attorney-client privilege? Why was it produced? It was produced due to the fact that it was disseminated between Attorney Goldberg, who was counsel, and the county. But I believe it was disseminated to others within the county. That answers it. But it's also critical in that it was Exhibit 12, County Exhibit 12. That was never admitted into the record. Portions of it was read into the record, the last paragraph, where there was concern echoed about what are we going to do? We're facing these grievances. We better address this. And I submit the county did. I submit they addressed the issue of employees not being paid overtime by the multiple departments. They didn't address it until what, January of 2012? They did not. I think they addressed it earlier. The plaintiffs, or excuse me, the appellant's argument is that they didn't address it as to these individuals until January of 2012. But I believe the county addressed it systematically much sooner. The delay here, if any, was in the payment to these particular appellants. And were they ultimately paid everything that they were owed? I submit they were. If there's any other questions, I appreciate it. Thank you. Judge, I hope I pronounced it okay. I probably won't. You're 100% right on the liquidated damages. That's what he likes to hear from all of us. 100% right, because he actually made a finding of an intentional violation. That's all I needed to get to the willful issue is intentional, deliberate. That's like a higher standard. All I had to show was recklessness. And here the district court made a finding and specifically wrote in the opinion, intentional, highlighted it, italicized it. And the intentional violation is you find out that you're violating the law, which you already should have known back in 2007, but then you continue to do it for 10 months thereafter, that is totally disregarding the Fair Labor Standards Act and actually making sure they don't have to comply with the FLSA. And so that's intentional. When you know about it and you don't do it, and I suggest it was 2007 when they found out, oh, I have to comply with FLSA, and they should know because of the tax documents that one employee is getting two W-2s or two tax documents. That's completely inappropriate. That's a violation of the Fair Labor Standards Act. So they should have known then. And then clearly when you're told by your labor lawyer that you shouldn't be doing what you're doing and you continue to do it, that's willful and intentional. So that issue should have been allowed to go to the jury because I had enough evidence. And, again, procedurally it was done incorrectly because of the fact it was at the close of my case in chief, not after I get an opportunity to correct any deficiencies. So clearly the willfulness, I had enough to get to a jury. Viewing everything in my favor, I should have proceeded there. I'm sorry. You said at the stage where you're allowed to correct your deficiencies. What stage of the trial is that? That would be after their case in chief. You have the burden, right? So the whole thing is usually made at that point. My analysis of the case law is that I always get an opportunity in their case in chief to correct. I'm sorry to interrupt you. That's okay. Even if you haven't proved your case at your stage, you get a chance to do it based upon the defendant's evidence? Well, if they are arguing something, clearly here I had enough. I stated to the court they continue to do the violation. That's enough to get to a jury. So it would have been better if the defense put nothing on. And then you're stuck. Then you don't get that chance. Well, no. I presented evidence of that document. It was actually admitted in the record. So I clearly had that. And regarding the fact that these low damages, I refer the court to the Molina case of the Second Circuit that I cite in my brief. It specifically says that FMLA claims, which are very similar to FLSA, are often small ticket items and small damages awards should be expected without raising the inference that the victory was technical or de minimis. And the court goes on in that case to say the purpose of fee-shifting statute is asserting that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate attorney's fees that are disproportionate to the plaintiff's recovery. So clearly the fact of the awards versus the attorney fees cannot be used against one in the motion for attorney fees. Thank you very much. Thank you. Thank you to both counsel for being with us today. And we'll take the matter under advisement and recess.